UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID WEBSTER, Individually and as
representative of other similarly situated
property owners and as representative of
a class pursuant to Rule 23 FRCP,

                              Plaintiff,

            -vs-                                      02-CV-00395C(F)

NATIONAL FUEL GAS SUPPLY CORPORATION,

                              Defendant.

---

APPEARANCES:   KILLEEN & KILLEEN (HENRY W. KILLEEN, III, ESQ., and ALLITHEA E. KILLEEN, ESQ., of Counsel), Orchard Park, New York, for Plaintiffs.

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER LLP (RICHARD F. GRIFFIN, ESQ. And EDWARD S. BLOOMBERG, ESQ., of Counsel), Buffalo, New York, for Defendants.

## INTRODUCTION

Defendant National Fuel Gas Supply Corporation[1] ("Supply Corp.") has brought a motion to dismiss plaintiffs' action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Item 3. This case involves the underground storage of natural gas by the defendant and plaintiffs' attempt to recover damages for the defendant's interference with the use of their property by virtue of the storage. Against the backdrop of this litigation, the defendant and some of the plaintiffs have been involved in state court

---

[1] National Fuel Gas Supply Corporation is a separate legal entity from National Fuel Gas Corporation, which has no involvement in the transactions at issue in this case.

proceedings pursuant to the New York State Eminent Domain Procedure Law ("EDPL"). Defendant commenced condemnation proceedings against some landowners to acquire easements for the underground storage of natural gas, and those landowners have been awarded compensation for the use of their property. Both the condemnation and the compensation have been affirmed on appeal by the New York State Supreme Court, Appellate Division, Fourth Department.

## BACKGROUND AND FACTS

This action was commenced with the filing of a complaint on May 29, 2002. Item 1.[2] Plaintiffs' complaint asserts twelve causes of action, including two federal claims. In their First Cause of Action, plaintiffs allege "Inverse Condemnation," an illegal and unconstitutional taking of property belonging to the landowners without notice, adequate notice, and/or an opportunity to be heard, in violation of the Fourth, Fifth, and Fourteenth Amendments. *Id.*, ¶¶ 94 - 102. In their Twelfth Cause of Action, plaintiffs allege a violation of substantive and procedural due process, in that the EDPL does not provide adequate notice and an opportunity to challenge the taking under New York law. *Id.*, ¶¶ 187-90. In addition, plaintiffs assert ten common law claims under New York State law, including: Unjust Enrichment, Nuisance/Trespass, Property Damage, Duress/Coercion, Breach of Contract, Fraud and Misrepresentation, Unconscionable, Tortious Interference with Contracts, Interference with Quiet Enjoyment, and Violations of the Rule Against

---

[2] Plaintiffs initially attempted to commence this action by filing a complaint in September 2000. Item 3, Ex. A. Thereafter, they filed an amended complaint, but neither complaint was properly served. In an order dated May 22, 2002, this court dismissed the amended complaint for lack of proper service. Item 3, Exhibit C. Thus, the complaint filed in the current action is the third complaint that has been filed.

Perpetuities. *Id.,* ¶¶ 103-86.

Plaintiffs include 94 landowners in the Town of Concord, New York. Underneath or adjacent to plaintiffs' land is a naturally occurring underground storage field called the Zoar Storage Field, where defendant stores natural gas in underground rock formations and, plaintiffs allege, has done so since approximately 1916. Item 1, ¶ 25.[3] In 1948, National Fuel's predecessor was granted a Certificate of Public Convenience and Necessity by the Federal Power Commission (predecessor to the Federal Energy Regulatory Commission–"FERC"), covering multiple storage fields in Erie County, New York. *Id.,* ¶ 26. This certificate established certified boundaries for the Zoar Storage Field. *Id.,* ¶ 27.

In approximately 1977, upon learning that the boundaries of the Zoar Storage Field were larger than it originally believed, defendant applied to FERC for a permit to certify the Field with larger boundaries. Item 1, ¶ 73. FERC granted the application and issued an Order Amending Certificate dated July 29, 1999. *Id.,* ¶ 74. Defendant sought to obtain storage leases from some landowners within the larger Zoar Storage Field, and was authorized in the Order Amending Certificate to condemn storage easements under the property of the remaining landowners.

In May 2000, Supply Corp. commenced 62 condemnation proceedings pursuant to the EDPL in New York State Supreme Court seeking easements permitting the underground storage of natural gas. Item 1, ¶ 81. The plaintiffs, as respondents in that action, interposed three counterclaims–the first alleging an unconstitutional taking, the second alleging public health and safety dangers, and the third alleging interference with

---

[3] This factual statement is taken from the Complaint, and the various papers in support of and in opposition to the motion to dismiss.

property rights. Item 22, Exh. B. These counterclaims were dismissed without prejudice by New York State Supreme Court Justice Eugene M. Fahey in an order dated September 5, 2001 as falling outside the purview of the EDPL proceeding. *Id.,* Exh. C. In a Memorandum Decision dated July 31, 2001, Justice Fahey granted the petitions and concluded that the EDPL proceeding did not violate the plaintiffs' due process rights. Item 3, Exh. E. Some landowners appealed these rulings to the New York State Supreme Court, Appellate Division, Fourth Department, specifically raising the constitutionality of the application of the EDPL. Item 3, Exhibit F. Justice Fahey's determination was affirmed on appeal. *See National Fuel Gas Supply Corp. v. Town of Concord*, 752 N.Y.S.2d 187 (App. Div. 2002).

Thereafter, the plaintiffs served claims for compensation under the EDPL. Item 22, Exh. D. Defendant moved to dismiss portions of the damages claims, and the motion was granted in part. In an order dated February 18, 2003, Justice Fahey found that the applicable limitations date for valuation purposes was May 1997, and that no claims would lie for any period prior to that time. *Id.*, Exh. F. This order was appealed, but the appeal was dismissed for failure to timely perfect. *Id.,* Exh. H.

The parties then proceeded to the compensation phase of the EDPL proceeding. After hearing testimony regarding the value of the easements, Justice Fahey, in a Memorandum Decision dated August 7, 2003, awarded compensation in the amount of $7.50 per acre, retroactive to the date of the commencement of the EDPL proceedings. Item 22, Exh. I. Justice Fahey awarded no compensation for "property damages resulting from the takings or any other possible trespassing" by Supply Corp. as "no competent proof" had been presented as to those issues. *Id.,* p. 20. The valuation determination was

affirmed by the Appellate Division, Fourth Department. *See National Fuel Gas Supply Corp. v. Goodremote,* 787 N.Y.S.2d 570 (App. Div. 2004). Plaintiffs declined to pursue an appeal of this decision to the New York State Court of Appeals.

The 94 plaintiffs, all property owners affected by the underground storage activities of defendant at its Zoar Storage Field, fall into three categories. The first group consists of those landowners who own land within the storage field and have signed leases with defendant (referred to by defendant as the "Contract Landowners," Item 4, p. 5). This group generally contends that their agreements with defendant are invalid for various reasons, as outlined in the common law causes of action. The second group is comprised of those landowners who have refused to sign leases but have gas stored on their land (referred to by defendant as the "State Court Condemnees," Item 4, p. 6). Defendant initiated condemnation proceedings in New York State Supreme Court against the members of this group. Finally, the third group is comprised of those plaintiffs who own property adjacent to the storage field, but not in it (referred to by defendant as the "Adjacent Landowners", Item 4, p. 6). These plaintiffs contend that they are prevented from utilizing the natural gas beneath their properties because, due to New York State Department of Environmental Conservation regulations, they cannot place a gas well within 1,320 feet of the storage field.

On July 23, 2002, defendant brought this motion to dismiss the complaint, arguing that this court has no subject matter jurisdiction over the plaintiffs' claims. Item 3. Specifically, defendant contends that plaintiffs have either failed to state a claim under 42 U.S.C. § 1983, that the federal claims are unripe for review, or that this court should abstain from considering the claims.

On September 16, 2002, plaintiffs submitted an Attorney's Affirmation with exhibits in opposition to the motion to dismiss. Item 6. Oral argument was heard on September 20, 2002. At the court's invitation, the parties filed supplemental memoranda of law on November 5, 2002 and November 13, 2002. Items 11, 12. Following the compensation phase of the EDPL proceedings and at the court's request, on October 23 and 27, 2003, the parties submitted additional memoranda regarding the effect of the state court proceedings on the motion to dismiss. Items 19, 20. Defendant submitted a reply affidavit on November 19, 2003 (Item 22), and plaintiffs submitted affirmations on December 10, 2003. Items 26, 27.

The parties asked for permission to submit additional memoranda on the recent Supreme Court case, *San Remo Hotel, L.P. v. City and County of San Francisco,* ____ U.S. ____, 125 S.Ct. 2491 (2005), and its possible application to this case. Plaintiffs filed their memoranda on July 23, 2005 (Item 37), and defendant filed its memoranda on August 2, 2005. Item 38. Both parties filed reply memoranda on August 30, 2005. Items 40, 41. Plaintiff also submitted a letter brief on November 3, 2005. Item 44. Additional oral argument was heard on November 9, 2005.

For the reasons that follow, defendant's motion to dismiss the complaint is granted in part and denied in part.

**DISCUSSION**

**I.     Plaintiffs' Inverse Condemnation Claim**

Plaintiff's first claim that is premised on federal question subject matter jurisdiction is an inverse condemnation cause of action alleging violations of the Fourth, Fifth, and

Fourteenth Amendments under 42 U.S.C. § 1983. Defendant argues that plaintiffs' inverse condemnation claim should be dismissed because, as to the Contract and Adjacent Landowners, it has taken no action under color of state law and, further, that a claim by any of the plaintiffs for inverse condemnation is not ripe for review. Item 4, pp. 7-11. Additionally, defendant argues that to the extent the Adjacent Landowners allege a regulatory taking, the claim must be dismissed because Supply Corp. did not promulgate the applicable well-spacing regulations. Item 4, pp. 12-13.

As the basis for their inverse condemnation claim pursuant to 42 U.S.C. §1983, plaintiffs contend that defendant's actions "constitute an illegal and unconstitutional taking or [sic] property belonging to landowners . . . ." Further, plaintiffs assert that "[w]ithout any notice and/or without adequate notice, and without any opportunity to be heard, right and title to lands has been taken by [Supply Corp.] and/or its predecessors in interest." Item 1, ¶¶ 95, 96. They charge that defendant's efforts to cause them to give up "*all* their mineral rights . . . and very often surface rights as well" are "not *de minimus* in nature, and therefore constitute a taking . . . ." *Id.,* ¶¶ 101, 102.

Defendant has moved to dismiss plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). While a court must accept as true all material factual allegations in the complaint, in considering such a motion, the court "does not draw inferences in plaintiff's favor." *Goodman v. Children's Television Workshop,* 1999 WL 228396, at *2 (S.D.N.Y. April 19, 1999). "A plaintiff

7

asserting subject matter jurisdiction, once challenged, has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Seventh Regiment Fund v. Pataki,* 179 F. Supp. 2d 356, 360 (S.D.N.Y. 2002).

### A.   State Action

Defendant correctly notes that for a 42 U.S.C. §1983 action to lie, there must be an action taken under color of state law. With respect to the Contract and Adjacent Landowners, defendant contends that it has taken no such action. Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. §1983. To state a claim under section 1983, "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State . . . *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (quotations and citations omitted); *see also Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir. 2001).

Plaintiffs argue that defendant is a state actor by virtue of its status as a regulated utility and its conduct in storing natural gas under plaintiffs' property pursuant to the FERC certificate. They rely on *Palmer v. Columbia Gas of Ohio, Inc.,* 479 F.2d 153, 165 (6th Cir. 1973), in which a gas company's action in entering a home and terminating service was

"fully circumscribed by an all-encompassing system of state statutes, city ordinances and the supervision of the state regulatory authority . . . ." *Palmer,* 479 F.2d at 165. In *Palmer,* the court recognized that the state was significantly involved in the termination of service because a state statute permitted the utility's actions. The court reasoned that "the regulatory activities of the state . . . insinuated it into a position of interdependence with the company so that it must be recognized as a joint participant with the company . . . . " *Id.* The utility was found to be a state actor, but *Palmer* has been limited to its peculiar facts. *See Northrip v. Fed. Nat'l Morrtgage Ass'n,* 527 F.2d 23, 31 (6th Cir. 1975).

Courts have found state action present in the exercise by a private entity of powers traditionally reserved exclusively to the State–*i.e.*, the power of eminent domain. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352-53 (1974). Defendant admits that as against the State Court Condemnees, its activity in seeking condemnation in state court is action taken under color of law. Pursuant to its FERC Certificate of Public Convenience, in those instances where defendant was unable to negotiate a lease for the underground storage of natural gas in the Zoar storage filed, it was allowed to acquire the easement by the exercise of the right of eminent domain. *See* Natural Gas Act § 7, 15 U.S.C. § 717f(h). However, plaintiffs have not alleged that defendant exercised the power of eminent domain as against the Contract Landowners. In fact, plaintiffs allege in their complaint that defendant "pretended to have eminent domain powers at a time when they had no such powers . . . ." Item 1, ¶ 64. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson, supra,* at 350. State action is found only where there is such a

"close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 294 (2001) (quotation and citation omitted).

Here, defendant has done nothing "under color of any statute . . . of any State"–*i.e.*, the EDPL, to deprive the Contract or Adjacent Landowners of any constitutional right. They negotiated leases with the individual landowners for the storage of natural gas beneath the property owned by the Contract Landowners such that no uncompensated taking occurred. Defendant did not take property belonging to the Contract Landowners pursuant to its powers of eminent domain. Thus, the Contract Landowners, none of whom were parties to the state court condemnation proceedings, have not alleged state action and cannot state a valid section 1983 claim. Likewise, plaintiffs do not allege that Supply Corp. stored natural gas beneath the properties of any of the Adjacent Landowners, either pursuant to a lease or following condemnation proceedings. Defendant has done nothing under color of law to effectuate a taking of the property of the Adjacent Landowners, and they cannot state a valid claim under section 1983.

### B. Ripeness

Plaintiffs have alleged "an illegal and unconstitutional taking" of property without notice or an opportunity to be heard. Item 1, ¶¶ 95, 96. Defendant contends that a claim for inverse condemnation must be litigated in state court before the federal claim under section 1983 may be commenced. Item 4, p. 9.

The Takings Clause (also known as the Just Compensation Clause) of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., amend. V. This Fifth Amendment prohibition is applicable to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160 (1980). To establish a takings claim under 42 U.S.C. § 1983, plaintiffs must show: "(1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation." *HBP Assoc. v. Marsh,* 893 F. Supp. 271, 277 (S.D.N.Y. 1995). It is important to note that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without *just compensation.*" *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194 (1985) (emphasis added).

Plaintiffs argue that the *Williamson* ripeness doctrine does not apply to the alleged taking in this case because this is a case of an actual physical taking. This argument is without merit. "Unconstitutional takings can occur [in] two ways. First, a property owner may suffer a physical invasion or permanent occupation of a property . . . . Second, a regulatory scheme may result in a compensable taking without a physical invasion where the regulatory scheme goes 'too far.'" *Diederich v. County of Rockland,* 999 F. Supp. 568, 573 (S.D.N.Y. 1998) (citing *Meriden Trust and Safe Deposit Co. v. F.D.I.C.,* 62 F.3d 449, 454 (2d Cir. 1995)). In *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375 (2d Cir. 1995), *cert. denied,* 519 U.S. 08 (1996), the court held that *Williamson* "drew no distinction between physical and regulatory takings," and the rationale of that case "demonstrates that any such distinction would be unjustified." *Id.* at 380; *see also Daniel v. County of Santa Barbara,* 288 F.3d 375, 381-82 (9th Cir.), *cert. denied,* 537 U.S. 973 (2002) (*Williamson*

applies to both regulatory and actual takings); *Citizens Accord, Inc., v. Town of Rochester,* 2000 WL 504132 (N.D.N.Y. April 18, 2000), *aff'd,* 29 Fed. Appx. 767 (2d Cir. 2002).

Following the Supreme Court's decision in *San Remo Hotel, L.P. v. City and County of San Francisco,* 125 S.Ct. at 2491, plaintiffs also argued that the *Williamson* requirement does not apply to this action for the additional reasons that (1) the defendant is not a municipal body or agency and (2) the *Williamson* decision has been called into doubt in a concurrence by the late Chief Justice Rehnquist in *San Remo.* Despite plaintiffs' arguments, the court concludes that *Williamson* is still the prevailing law. Plaintiffs have pointed to no authority to support their position that the *Williamson* exhaustion requirement should be suspended when the defendant is a private corporation. As plaintiffs assert a federal takings claim, they are required to seek their remedy in state court if one is available. Additionally, unless and until the Supreme Court revisits *Williamson*, this court is bound by Supreme Court precedent.

The law is well settled that a landowner "has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State . . . ." *Williamson County,* 473 U.S. at 195. Thus, "before a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a reasonable, certain and adequate provision for obtaining compensation." *Villager Pond,* 56 F.3d at 379-80 (citations omitted). New York State provides two such "reasonable, certain and adequate provisions" to obtain just compensation. The first "is to seek compensation through the procedures detailed in the New York State Eminent Domain Procedure Law." *Vaizburd v. United States,* 90

12

F. Supp. 2d 210, 216 (E.D.N.Y. 2000). Secondly, there is a state cause of action for inverse condemnation, or *de facto* taking, pursuant to Article 1, § 7 of the New York State Constitution, whereby a property owner may seek compensation for the taking of property by a body clothed with the power of eminent domain. *See Higgins v. Village of Orchard Park,* 716 N.Y.S.2d 845, 848 (App. Div. 2000). "If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the government for a taking." *Williamson,* 473 U.S. at 194-95 (quotations and citation omitted). While the State Court Condemnees sought compensation through the EDPL, neither the Contract Landowners nor the Adjacent Landowners have alleged that they sought compensation through a state inverse condemnation claim prior to bringing this federal action. Accordingly, the federal takings claims of these plaintiffs are unripe for review.

At oral argument, plaintiffs' counsel stated that the plaintiffs seek no remedy with respect to the EDPL claims. The essence of their federal takings claim is the so-called "historical" claim, in which they seek damages for the underground storage of gas in the Zoar Storage Field from approximately 1916 up to the valuation date of the EDPL proceeding. While the State Court Condemnees attempted to raise the "historical" claims in the EDPL proceeding as counterclaims, those counterclaims were dismissed without prejudice, and plaintiffs failed to pursue those "historical" claims in a state court action for a *de facto* taking. As the plaintiffs are asserting an unconstitutional taking of their property, they must resort to state procedures under the *Williamson* doctrine. Additionally, at oral argument, plaintiffs' counsel stated that the plaintiffs would prefer to litigate their

13

claims in federal court. However, as the Court made clear in *San Remo,* plaintiffs' preference for a federal forum is irrelevant for statutory or constitutional purposes. *Williamson* requires that plaintiffs bring their federal takings claims in state court. *San Remo,* 125 S.Ct. at 2504-05.

In their § 1983 inverse condemnation claim, plaintiffs also alleged a violation of the Fourth Amendment, citing *Soldal v. Cook County, Illinois,* 506 U.S. 56 (1992). Reliance on this case to state a takings claim is misplaced. The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures . . . ." U.S. Const., amend. IV. The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court,* 387 U.S. 523, 528 (1967). In *Soldal,* plaintiffs alleged a violation of the Fourth Amendment when their mobile home was physically removed from its lot without a proper eviction order. The Court stated that the unreasonable seizure of the mobile home was expressly forbidden by the language of the Fourth Amendment but noted, however, that the Fourth Amendment "does not protect possessory interests in all kinds of property." *Soldal,* 506 U.S. at 62 n.7 (citing *Oliver v. United States,* 466 U.S. 170, 176-77 (1984) (reaffirming doctrine that Fourth Amendment protection does not extend to "open fields")); *see also Hester v. United States*, 265 U.S. 57 (1924). In a Fourth Amendment search-and-seizure case, Justice Brennan noted in dicta that inverse condemnation "is not what the Fourth Amendment is all about." *Florida v. Riley,* 488 U.S. 445, 462 (1989) (Brennan, dissenting). A claim for the taking of private property for public use without just

compensation is properly asserted under the Fifth and Fourteenth Amendments. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1411 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman,* 75 F.3d 1311 (9th Cir. 1996); *Cassettari v. County of Nevada, California,* 824 F.2d 735, 740 n.7 (9th Cir. 1987). In the court's view, plaintiff has pleaded nothing more than a takings claim under the Fifth Amendment, which is not ripe for review.

Accordingly, plaintiffs' claim of an unconstitutional taking under section 1983 must be dismissed.

### C. Regulatory Taking

Finally, defendant argues that the Adjacent Landowners' claim of a regulatory taking under section 1983 must be dismissed because Supply Corp. did not promulgate the well-spacing regulations at issue. In her Affirmation in opposition to the motion, plaintiffs' attorney denied that the Adjacent Landowners had suffered a regulatory taking. Item 6, ¶ 25. She argues that defendant's "actual physical possession . . . of the surrounding acreage" constitutes a taking of property from the Adjacent Landowners. *Id.* As stated above, a takings claim requires that plaintiff show a property interest that has been taken under color of state law without just compensation. *HBP Assoc. v. Marsh,* 893 F. Supp. at 277. As defendant has taken no property interest of the Adjacent Landowners, there can be no claim of an actual taking against these plaintiffs. At best, plaintiffs have raised a claim for a regulatory taking against the DEC, the government entity that promulgated the well-spacing regulations at issue.

Regulatory takings generally require some government regulation or other government action that compels the owner to sacrifice all economically viable uses of his or her property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015 (1992); *Broad v. Sealaska Corp.*, 85 F.3d 422, 431 (9th Cir. 1996), *cert. denied,* 519 U.S. 1092 (1997). Here, defendant has not taken any regulatory action with regard to the property of the Adjacent Landowners. The storage of natural gas pursuant to a FERC authorization has only indirectly affected the Adjacent Landowners by virtue of the New York State well-spacing regulations. Any claim of a regulatory taking would be properly addressed to the state. In any event, New York's well-spacing regulations have been upheld as a constitutional exercise of the police power. *See Sylvania Corp. v. Kilborne,* 271 N.E.2d 524 (N.Y. 1971). Accordingly, the takings claims of the Adjacent Landowners must be dismissed.

## II.    The Due Process Claim

In their Twelfth Cause of Action, plaintiffs allege that they are suffering a violation of their substantive and procedural due process rights guaranteed by the Fourteenth Amendment because the New York State EDPL "does not give them adequate notice and opportunity to come forward to challenge the taking . . ." as a result of defendant's "apparent exemption from the notice and hearing provisions . . . ." Item 1, ¶¶ 187, 188. Defendant argues that this cause of action should be dismissed based on the *Younger* abstention doctrine. *See Younger v. Harris,* 401 U.S. 37 (1971). Additionally, defendant contends that the EDPL is constitutional on its face. Item 4, pp. 13-15. Plaintiffs contend that the *Younger* abstention doctrine does not apply because they seek money damages.

*Younger v. Harris* and its progeny espouse the federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. *Younger* abstention is appropriate where (1) state judicial proceedings are ongoing; (2) important state interests are implicated; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). While the *Younger* factors are arguably satisfied in this case,[4] *Younger* abstention is inappropriate where a litigant seeks money damages for an alleged violation of § 1983. *See Rivers v. McLeod,* 252 F.3d 99, 101-102 (2d Cir. 2001) (citing *Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir. 2000)). Here, plaintiffs seek money damages for the alleged "unconstitutional taking of all past and future mineral rights . . . ." Item 1, p. 29. Accordingly, the motion to dismiss for lack of subject matter jurisdiction based on *Younger* abstention is denied.

The court notes that the State Court Condemnees raised the issue of the defendant's exemption from the notice and hearing provisions of the EDPL in the state court proceeding before Justice Fahey. Justice Fahey concluded that Supply Corp. was exempt from the public hearing requirement and that notice was properly published in the *Federal Register*. Item 3, Exh E, p.4. Moreover, Justice Fahey rejected plaintiffs' due process challenges to the EDPL. *Id.,* p. 6. Plaintiffs reasserted these arguments on appeal. Item 3, Exh. E, p. 6. In a Memorandum Decision, the Appellate Division, Fourth Department, agreed with Justice Fahey that Supply Corp. was exempt from the public hearing requirements of EDPL Article 2. On the issue of adequate notice, the court found

---

[4] Defendant contends that state proceedings are still ongoing, as plaintiffs did not seek an appeal of the EDPL determination to the New York State Court of Appeals.

17

that the proper vehicle for such a contention would be FERC's administrative review process or a proceeding commenced in federal court under the Natural Gas Act. Finally, the court examined the plaintiff's remaining contentions and concluded that they lacked merit. *National Fuel Gas Supply Corp. v. Town of Concord*, 752 N.Y.S.2d 187, 189 (App. Div. 2002).

To the extent that defendant now seeks dismissal of the Twelfth Cause of Action based on principles of preclusion, such a motion has not been formally made, and plaintiffs object to the defendant's reassertion of this aspect of the motion to dismiss under Rule 12(b)(6) when the original motion was made under Rule 12(b)(1). Item 37, pp. 5-8. Defendant has requested leave to file a formal motion under Rule 12(b)(6) (Item 41, p. 8), and the court grants such permission.

### III.    The State Claims

Defendant argues that if the inverse condemnation and due process claims are dismissed, this court should dismiss the remaining pendent state claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Item 4, p. 16-19. This court has the authority to do so pursuant to 28 U.S.C. § 1367(c)(3), which provides that the district court may decline to exercise supplemental jurisdiction over a claim if the "court has dismissed all claims over which it has original jurisdiction." In general, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001) (quotation and citations omitted). Here, as the court has denied the motion to dismiss the due process claim, it will retain jurisdiction of the pendent state claims.

**CONCLUSION**

Defendant Supply Corp.'s Motion to Dismiss, Item 3, is granted in part and denied in part. Defendant is granted leave to file a further motion to dismiss the Twelfth Cause of Action under Fed. R. Civ. P. 12(b)(6). Such motion shall be filed on or before May 1, 2006, and plaintiffs may file a response on or before May 15, 2006. At that time, the court will consider the motion submitted.

So ordered.

_____\s\ John T. Curtin___
JOHN T. CURTIN
United States District Judge

Dated:    April 3          , 2006
p:\pending\2002\02-395.mar1606